BARBARA JEAN CRAIL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crail v. Commissioner
Docket No. 2812-90
United States Tax Court
T.C. Memo 1993-40; 1993 Tax Ct. Memo LEXIS 40; 65 T.C.M. (CCH) 1846; February 2, 1993, Filed *40 Decision will be entered for respondent. For Petitioner: John Alan Cohan. For Respondent: Joyce M. Marr. FAY
FAY
MEMORANDUM OPINION FAY, Judge: By statutory notice of deficiency, respondent determined deficiencies in and additions to petitioner's Federal income taxes in the following amounts: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(1)(A)
1984
$  9,040
$ 1,356
$   457
-  1985
42,251
0  2,113
-  1986
21,141
0  -  $ 1,057
Additions to Tax
Sec.
Sec.
Sec.
6653(a)(2)
6653(a)(1)(B)
6661(a)
1984
[1]
-
$  2,260
1985
[1]
-
10,563
1986
-
[1]
5,285
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues before us are: (1) Whether petitioner engaged in the activity of breeding and showing horses during the taxable years *41 1984, 1985, and 1986 with the requisite profit objective under section 183. We hold that petitioner did not; (2) whether petitioner is entitled to deductions claimed for investment tax credits on petitioner's Federal income tax returns for the years at issue. We hold that petitioner is not; (3) whether petitioner is liable for the addition to tax for failure to timely file petitioner's Federal income tax return for the taxable year 1984. We hold that petitioner is; (4) whether petitioner is liable for the additions to tax for negligence for the years at issue. We hold that petitioner is; and (5) whether petitioner is liable for additions to tax attributable to substantial understatements of income tax pursuant to section 6661. We hold petitioner is. The stipulation of facts and attached exhibits filed by the parties are incorporated herein by this reference. [1] At the time the petition was filed in this case, petitioner resided in the State of California. *42 Background
Petitioner has been involved with horses all her life and holds a degree in animal husbandry from the University of California at Davis. During the years at issue, petitioner was single and had no dependents. During the years at issue, petitioner maintained a horse ranch on land contiguous to her residence near Sun City, California. Petitioner purchased her land in three separate parcels. Petitioner's residence is located on the first parcel of land, which consists of 5 acres of land acquired in 1963. In 1985, petitioner acquired two additional parcels consisting of a total of 10 acres adjoining the 5 acres petitioner purchased in 1963. During 1985 and 1986, approximately 10 acres of petitioner's 15 total acres were used in connection with petitioner's horse breeding and showing activity. Improvements on the land included storage buildings, barns, fencing, farm pastures, and another house rented to a tenant rancher. Petitioner's principal horses during the years at issue included: Name of Horse
Cost Basis
Dry Chaz
$ 16,000
Ms. Leo Quixote
10,600
Pug O'Lena
7,500
Petitioner owned several other horses during the years at issue for which deductions *43 were claimed on petitioner's 1984, 1985, and 1986 Federal income tax returns. [2]
Petitioner's horse activity during the years before us included selecting horse trainers, conferring with veterinarians and trainers, exercising and evaluating horses, purchasing horses and equipment, attending horse competitions, studying horse journals, and cleaning barns. Petitioner reported the following income and expenses related to petitioner's horse activity on Schedule F for the tax years 1984 through 1986: Farm Income
Year
Income
Expenses
or (Loss)
1984
0  $  32,306
$  32,306)
1985
$ 2,815
108,890
( 106,075)
1986
6,381
112,621
( 106,240)
Petitioner's horse activity has not generated a profit since petitioner first began deducting expenses related to her horse activity in 1979. [3]
*44 During the years at issue, petitioner reported additional income or (loss) from other sources as follows: Dividends, Interest
Year
& State Tax Refunds
Capital Gains
Rental Income
1984
$  16,523
0   $ 22,785 1985
116,233
$ 668,044
6,844 1986
178,180
44,250
( 1,769)
The capital gain of $ 668,044 reported on petitioner's 1985 Federal income tax return was generated by the sale of certain oil lease interests held by petitioner in Cat Canyon, California. This relatively large amount of cash allowed petitioner to expend more resources in connection with her horse activities. For example, petitioner purchased three mares and made the majority of the improvements to her ranch in 1985. Respondent disallowed petitioner's deductions from the horse activity for the years before us only to the extent the deductions exceeded the income generated from this activity. [4] Respondent contends that petitioner did not engage in the horse breeding and showing activity with the requisite profit objective under section 183(a). *45 Discussion
Section 183
Petitioner argues she had an honest objective of making a profit from her activity during the years involved. Petitioner has the burden of proof to show that respondent's determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 183(a) provides that, if an "activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." In determining whether an activity is one engaged in for profit, petitioner must show that she engaged in the activity with an actual and honest objective of making a profit. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation need not *46 be a reasonable one, but there must be a good faith objective of making a profit. Dreicer v. Commissioner, supra; sec. 1.183-1(a), Income Tax Regs. The determination of whether the requisite profit objective exists is to be resolved on the basis of all the surrounding facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. Greater weight is to be given to the objective facts than to the taxpayer's mere statement of his/her intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., provides a list of nine factors to be used in determining whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; *47 (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. No one factor is conclusive in making this determination. Allen v. Commissioner, 72 T.C. 28, 34 (1979). Applying these factors to the case before us, we conclude that petitioner's horse activity was not engaged in for profit within the meaning of section 183(a). We find petitioner failed to conduct her activities in a businesslike manner. Petitioner maintained no separate bank account for her horse activity, and a single checking account was used by petitioner to pay for personal and horse-related expenses. For the years in issue, petitioner's records for the horse activity consisted of canceled checks and invoices kept in accordion files. The documents in the accordion files included documents related to the horse activity and documents related to other personal nondeductible expenditures. The documents related to *48 the horse activity were not filed separately from those documents related to other nondeductible personal expenditures. No contemporaneous journals or formal accounting records were kept. As a whole, petitioner's scant records present an incomplete financial picture of petitioner's horse activity. Additionally, petitioner kept no budget or written business plan. [5]
During the years at issue, petitioner engaged the services of an accountant, Lu Artz (Artz), who is also petitioner's aunt. Artz' testimony, however, was scrambled and generally unreliable. For example, Artz testified that petitioner maintained only one checking account because "she didn't have enough money for two" and also because "I wanted one [checking account] *49 because I wanted no commingling." Moreover, Artz provided no explanation why 100 percent of petitioner's cost for utilities, telephone, and vehicles was allocated exclusively to petitioner's horse activity and thus deducted in full on petitioner's Federal income tax returns for the years at issue. No allocation was made in connection with petitioner's nondeductible personal use of such costs. Furthermore, the record before us reveals a string of consecutive losses extending for 10 years -- 1979 through 1988 [6] -- and, in each of those years, petitioner incurred a substantial loss. Moreover, the losses generally increased over the years: in 1979 the loss was $ 5,076, but in 1985 it increased to $ 106,075, and in 1988 the loss was $ 109,886. For the 10 years, the losses totaled $ 557,010. Substantial losses increasing over time are indicative of a lack of profit motive. Golanty v. Commissioner, supra at 426. Petitioner also testified that she did not experience many casualties or setbacks during the years at issue that could explain these losses. *50 Petitioner submitted no credible evidence to show that her horse activity had any possibility of recouping the losses sustained and turning a profit, nor did petitioner even calculate a break-even point for her activity. Petitioner's testimony that she expects to recoup her losses within the next 4 years is simply not credible. During the years in issue, petitioner realized significant amounts of income from passive sources not related to her horse breeding and showing activity, which allowed petitioner to continue her horse activity despite mounting losses. The regulations indicate that whether the taxpayer has other means of support is a factor to be considered in determining the profit motive of the taxpayer. Sec. 1.183-2(b)(8), Income Tax Regs. Thus, the presence of substantial outside income in this case is evidence of petitioner's lack of profit motive. While there is no requirement that a person dislike what she is doing in order for the Court to find a profit motive, the regulations specify that the element of personal pleasure is to be considered in determining whether an individual has a profit motive. Petitioner has been involved with horses throughout her entire *51 life, having first had a pleasure horse and shown horses as a teenager. Petitioner has ridden horses during training in order to show better in competitions. [7] In addition, petitioner testified that she takes pride in the belt buckles won by her horses even though they are worth less than $ 300 each. Petitioner's affinity for her horses is evidenced by the fact that she refers to their foals as her babies. These facts illustrate a significant element of personal pleasure and hobby interest which petitioner holds in the horse activity before us. Petitioner argues that, beginning in 1984, in order to improve profitability, petitioner culled her herd to discontinue the breeding and showing of reining horses and, instead, switched to the breeding and showing of cutting horses. [8] The factual evidence before this Court does not support petitioner's contention. Petitioner's retention *52 of several reining horses beyond the years before us undercuts petitioner's position. For example, petitioner purchased Nuggets Sunny San in 1983 prior to her decision to cull her herd. Yet petitioner still retained such horse at the time of trial of this case in January 1992. Petitioner deducted expenses related to Nuggets Sunny San on her Federal income tax returns for the tax years 1984, 1985, and 1986. Petitioner urges this Court to consider petitioner's expectation that the value of petitioner's land would appreciate as a factor evidencing petitioner's profit motive. We disagree. Initially, we note that we are not convinced that petitioner's holding of land and petitioner's horse activity constitute a single activity. See sec. 1.183- 1(d)(1), Income Tax Regs. Moreover, petitioner *53 has not presented any evidence that the land petitioner held appreciated at all during the years in question in connection with its use as a horse ranch. [9]
We have considered petitioner's remaining arguments and find them lacking in merit. [10]
Investment Tax Credit
Respondent disallowed the amounts of $ 308, $ 1,712, and $ 784 claimed by petitioner *54 as investment tax credits for tax years 1984, 1985, and 1986, respectively. Since we find petitioner did not engage in her horse activity with a bona fide intent to derive a profit, petitioner is not entitled to claim the investment tax credits at issue. Finoli v. Commissioner, 86 T.C. 697, 744 (1986). Failure to File
Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for 1984 for untimely filing her return. Petitioner bears the burden of proving that her failure to file a timely return is due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioner presented no evidence on this issue whatsoever; thus, we find petitioner has conceded this issue. Negligence
Respondent has determined that petitioner is liable for additions to tax for negligence under section 6653(a)(1) for tax years 1984 and 1985 and section 6653(a)(1)(A) for tax year 1986. In addition, section 6653(a)(2) for tax years 1984 and 1985 and section 6653(a)(1)(B) for tax year 1986 impose an addition to tax equal to 50 percent of the interest *55 due on the portion of any underpayment attributable to negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The Commissioner's determination is presumptively correct and will be upheld unless the taxpayer is able to rebut this presumption by proving that the underpayment was not due to negligence or intentional disregard of rules and regulations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner has not presented any evidence whatsoever on this issue. Therefore, we sustain respondent's above determinations in connection with the additions to tax for negligence. [11]
*56 Substantial Understatement
Section 6661 provides for an addition to income tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Respondent has determined that petitioner is liable for an addition to tax pursuant to section 6661 for 1984, 1985, and 1986. Petitioner has presented no evidence to the contrary. Therefore, petitioner is liable for the addition to tax under section 6661 for such years. Decision will be entered for respondent. Footnotes
1. Fifty percent of interest due on the deficiency.↩
1. For unexplained reasons, at the trial of this case, petitioner failed to offer into evidence most of her exhibits which were described in the stipulation of facts as "marked for identification purposes only". On June 23, 1992, petitioner filed a Motion to Reopen Record of Proceedings in which petitioner moved this Court to admit into evidence petitioner's exhibits numbered 1 through 38. Respondent objected to this motion. By order dated Jan. 25, 1993, this Court granted, in part, petitioner's motion.↩
2. Petitioner testified that she owned "eight or nine" horses during 1985. Petitioner also testified that she owned several horses from 1984 to 1986, such as "Monique Too" and "Nuggets Sunny San".↩
3. Petitioner reported losses in connection with petitioner's horse breeding and showing activity during the following consecutive 10-year period as follows: ↩
Year
Loss
1979
$   5,076
1980
26,138
1981
16,082
1982
29,249
1983
33,846
1984
32,306
1985
106,075
1986
106,240
1987
92,112
1988
109,886
4. Respondent disallowed the net loss claimed and thus allowed deductions up to the amount of gross income from the activity under sec. 183(b)(2)↩.
5. Although petitioner testified that she carried most of the budget-type information in her head, we find her testimony not credible. At trial, petitioner was unaware of the total amount lost either since the inception of the horse activity or during petitioner's tax year ended Dec. 31, 1989.↩
6. Petitioner reported a Schedule F loss for 1989 as well, but at trial petitioner could not remember the extent of such loss.↩
7. Petitioner showed her horses in cutting horse competitions such as the National Cutting Horse and Pacific Cutting Horse Competitions.↩
8. Reining horses are judged during competitions on their ability to run, slide, spin, keep figure eight, and change leads. A cutting horse is judged based on its ability to maintain control over a cow that separates from the herd.↩
9. Petitioner introduced the testimony of Charles R. Rinehimer (Rinehimer), an appraiser, who appraised the value of petitioner's property and improvements at $ 562,000 as of Mar. 21, 1991. Rinehimer, however, had no basis to ascertain the value of petitioner's property or improvements during any of the years at issue.↩
10. Since petitioner's horse activity has not generated a profit since its inception, the presumption that the activity is engaged in for profit as provided by sec. 183(d)↩ does not apply.
11. Again, for unexplained reasons, petitioner's counsel did not dispute the merits of respondent's determinations, thus conceding the addition to tax for negligence.↩